HOOD, Judge.
The plaintiff in this suit seeks to recover benefits alleged to be due him by defendant under the provisions of an insurance policy, described as a “Lifetime Income Protection Policy,” which was issued to him by defendant on October 2, 1961. Plaintiff also demands penalties and attorney’s fees. After trial, judgment was rendered by the trial court in favor of plaintiff condemning defendant to pay monthly benefits as provided in the policy, but rejecting plaintiff’s additional demands. Defendant appealed, and plaintiff has answered the appeal praying that the judgment be amended to allow penalties and attorney’s fees.
Under the provisions of the policy, defendant is obligated to pay plaintiff the sum of $200.00 per month while plaintiff is totally and continuously disabled and under the professional care and regular attendance of a legally qualified physician. Plaintiff alleges that he sustained injuries to his back and right arm on November 2, 1961, and that he has been totally disabled since that time as a result of those injuries.
Defendant paid disability benefits to plaintiff monthly from the date of the injury until September 12, 1962, but these payments were discontinued on the last-mentioned date. In this suit plaintiff seeks primarily to compel defendant to resume the payment of these monthly benefits from and after September 13, 1962. The judgment rendered by the trial court condemns defendant to pay plaintiff the sum of $200.-00 per month, commencing on that date, and continuing “during the plaintiff’s disability.”
The first and principal issue presented on this appeal is whether the plaintiff has been totally disabled since September 13, 1962. Plaintiff contends, and the trial judge held, that he has been disabled since that time. The defendant contends, however, that plaintiff fully recovered from his injuries before that date and that the trial court erred in concluding that he is disabled.
The evidence shows that on November 2, 1961, while plaintiff was checking the banding on some rolls of paper which had been loaded into a boxcar, he slipped and fell a distance of seven or eight feet, striking the lower part of his back on a small stool. As a result of this fall he sustained injuries to his back and to his arm, which injuries were of such a nature that it was necessary for him to be hospitalized immediately. The injury to his arm healed without any residual disability by September 13, 1962, but plaintiff contends that he is still disabled from the back injury.
Plaintiff was 40 years of age when the injury was sustained. He is married and is the father of six children. He has a sixth grade education, and had been em *52 ployed as a shipping clerk by the Elizabeth Paper Company for nine years prior to the date of the above-described accident. His duties as shipping clerk required him to stand for long periods of time, to do some lifting and to perform some manual labor. Although he was employed regularly prior to the date of the accident, he has not been employed and has not performed manual labor of any kind since he sustained these injuries. Plaintiff testified that his back is stiff and pains him constantly, the pain becoming severe when he makes certain steps or causes his back to bend. He also states that his right leg pains him, that he frequently suffers from numbness and cramps in his leg, and that the pain is such that it is necessary for him to lie down often during the day in order to obtain relief. He states that he obtains little, if any, relief from pain by using the corset or back brace which a doctor prescribed for him, and that he has been unable to work since this accident occurred.
Mr. Chaffin has been under the care and treatment of Dr. Charles J. Aswell, Jr., a general practitioner, continuously since November 12, 1961. He was hospitalized from the date the accident occurred until December 6, 1961, a period of almost seven weeks, and he was hospitalized again for treatment of the injuries from March 27 to April 5, 1962. The treating physician, Dr. Aswell, is of the opinion that plaintiff has a ruptured intervertebral disk and that he has been totally disabled from performing manual labor since the date of the accident.
Four orthopedic surgeons examined plaintiff between the date of the accident and the time defendant discontinued the payment of monthly disability benefits, but none of these specialists found evidence of a disk injury in plaintiff’s back. Dr. George B. Briel, one of these orthopedists, concluded that plaintiff had sustained contusions of the right lower portion of the back or a straining of muscles and liga-mentous tissues in the lumbo-sacral region, which injuries in his opinion have rendered plaintiff totally disabled from performing manual labor since the date of the accident. The other three orthopedists were unable to find any orthopedic evidence of injury or disability, .and for that reason they declined to make a diagnosis. We think it is apparent from their testimony or reports, however, that they felt that plaintiff was not disabled.
After the payment of disability benefits to plaintiff had been discontinued on September 12, 1962, plaintiff was again examined by Dr. Briel and he also was examined by two neurosurgeons, Dr. John A. Colclough and Dr. Robert C. L. Robertson. As the result of an examination made on October 10, 1962, Dr. Briel concluded that plaintiff was still totally disabled from performing manual labor. Dr. Robertson, who examined plaintiff on October 12 and on December 26, 1962, was unable to make a definite diagnosis as to whether plaintiff had a ruptured disk, or as to the exact nature of his injury, but he testified that nevertheless in his opinion plaintiff was “disabled from doing work of a reasonable character in the line of laborious work.” Dr. Colclough was of the opinion that plaintiff had a ruptured disk, and he testified that in his opinion plaintiff was “totally disabled as with regard to resumption of his duties of laborious nature.” All of the doctors who examined plaintiff after the payment of disability benefits was discontinued, therefore, including the treating physician, an orthopedist and two neurosurgeons, feel that plaintiff is still totally disabled.
Since there is a conflict in the opinions expressed by the medical experts, however, we think it is appropriate to consider the lay testimony relating to the question of whether plaintiff has been disabled since September 13, 1962. The lay evidence, consisting of the testimony of plaintiff’s wife and four of his neighbors, is to the effect that continuously since the date of the accident plaintiff has walked with a limp, that he holds his body in a stooped position, that he is unable to drive his automobile, that he *53 frequently complains of pain in his back and he often remains in bed during the day because of those complaints, and that he has performed no manual labor and has not cared for his garden and livestock since the injury was sustained.
In our opinion the evidence, including both the lay testimony and that of the medical experts, supports the conclusion reached by the trial judge that plaintiff has been totally disabled since September 12, 1962, the date on which monthly disability payments were discontinued by defendant.
Defendant contends alternatively that plaintiff’s demands should be rejected because plaintiff made fraudulent and material misrepresentations of fact in his application for the policy which was issued to him, in that he did not disclose in his application that he had a prior existing disability for which he is presently drawing a pension from the United States Government. In resisting payment on that ground defendant relies on LSA-R.S. 22:619(B), which provides:
“B. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer. Amended and reenacted Acts 19S8, No. 125.”
The evidence shows that plaintiff was receiving a pension of $19.00 per month from the United States Government at the time he applied for the insurance policy on which this claim is based. According to plaintiff, this pension was paid for a disability which he described as “war nerves” suffered in World War II.
The application which was introduced in evidence shows that in response to a question asking for the cause and length of any disability which plaintiff ever had and for the date, cause and payor of any disability payments ever received, no disability or disability payments were listed. Plaintiff admitted that he signed the application which was filled out by the agent who sold him the insurance policy, but he testified that at the time the application was completed and signed he told the agent about the pension which he was receiving and the reason for the payment of such a pension. The defendant produced no evidence to contradict plaintiff’s testimony to that effect, so we conclude that this information was given to the agent at the time the application was prepared by him.
In Olivier v. Pennsylvania Life Insurance Company, La.App. 3 Cir., 146 So.2d 246, we said:
“It is well settled in this state that when an insurance agent takes upon himself the task of filling out an application for a policy, he is the agent of the insurer. As a consequence, any erroneous or untrue answers to questions contained in the application bind the insurer but not the insured, provided the insured justifiably has no knowledge of the omissions or mistakes by the agent and has been guilty of no fraud or bad faith. See Harris v. Guaranty Income Life Ins. Co., 226 La. 152, 75 So.2d 227, Telford v. New York Life Ins. Co., 227 La. 855, 80 So.2d 711 and Miller v. Preferred Life Ins. Co., La.App., 107 So.2d 323.” (146 So.2d 248).
And, in Gleason v. Bankers Life & Casualty Company, La.App. 2 Cir., 147 So.2d 86, the Second Circuit Court of Appeal, after quoting LSA-R.S. 22:619 (B), said:
“ * * * an insurer cannot escape its liability under the above provision *54 where the application was processed by a company salesman, as agent for the company, who falsifies the application despite truthful answers having been given by the applicant. * * *” (147 So.2d 88).
The evidence in this case establishes that plaintiff had no knowledge of the fact that the agent had failed to list this pension or disability payment in the insurance application, and that plaintiff had been guilty of no fraud or bad faith. Considering the fact that plaintiff did give the insurer’s agent all of the information requested in the application, that the agent himself filled out the application form, that plaintiff was not aware of the fact that this information had been omitted from that form, and that plaintiff was guilty of no fraud or bad faith, we conclude that plaintiff is not barred from recovery because of alleged fraudulent misrepresentations in his application for insurance coverage.
Since we have concluded that in the insurance application signed by plaintiff there were no false “representations” or “false statements,” as those terms are used in LSA-R.S. 22:619(B), it is unnecessary for us to consider the question of whether the alleged misrepresentations would have materially affected either the acceptance of the risk or the hazard assumed by the insurer.
Finally, plaintiff contends that defendant was arbitrary and capricious in discontinuing the payment of monthly benefits under the policy on September 12, 1962, and that plaintiff accordingly is entitled to recover penalties and attorney’s fees under the provisions of LSA-R.S. 22:657. As we have already pointed out, three orthopedic surgeons who examined plaintiff prior to that date were unable to find any evidence of disability. In view of these findings, we conclude that defendant was not unreasonable, arbitrary or capricious in discontinuing further payments to plaintiff. The trial court, therefore, correctly rejected plaintiff’s demands for penalties and attorney’s fees.
For the reasons herein set out, the judgment appealed from is affirmed. All costs-of this appeal are assessed to defendant-appellant.
Affirmed.